**Electronically Filed
Supreme Court
SCEC-18-0000654
31-AUG-2018
02:17 PM**

SCEC-18-0000654

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---

JANE AND JOHN DOE VOTERS 1-47, Plaintiffs,

vs.

ROMY CACHOLA, as an individual; SCOTT T. NAGO,
CHIEF ELECTION OFFICER FOR THE STATE OF HAWAIʻI,
in his official capacity, Defendants.

---

ORIGINAL PROCEEDING

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT
(By: Recktenwald, C.J., Nakayama, McKenna, Pollack, and Wilson, JJ.)

We have considered the August 21, 2018 amended complaint filed by plaintiffs Jane and John Doe Voters 1-47 ("Plaintiffs"), the August 27, 2018 motion to dismiss, filed by defendant Chief Election Officer Scott T. Nago ("Nago"), the August 28, 2018 motion in opposition to the motion to dismiss filed by Plaintiffs, the August 28, 2018 motion for discovery filed by Plaintiffs, and the August 29, 2018 motion to dismiss filed by defendant Romy Cachola ("Cachola"). Having heard this matter without oral argument and in accordance with HRS § 11-173.5(b) (2009) (requiring the supreme court to "give judgment fully stating all findings of fact and of law"), we set forth the following findings of fact and conclusions of law and enter the following judgment.

1.  Cachola was one of two Democratic Party candidates for the Office of State Representative, District 30 in the August 11, 2018 primary election.

2.  The election result for the Democratic Party race for the Office of State Representative, District 30 was as follows:

| | | |
|---|---|---|
| Romy M. Cachola | 920 | (48.2%) |
| Ernesto M. (Sonny) Ganaden | 869 | (45.5%) |
| Blank Votes | 120 | (6.3%) |
| Over Votes | 0 | (0.0%) |

3.  Cachola is the Democratic Party candidate who received the highest number of votes.

4.  On August 20, 2018, Plaintiffs filed an election complaint against Cachola and Nago.  Plaintiffs contend that they are "registered voters in Hawaii House of Representative District 30."  Plaintiffs filed a list of their names in-camera without seeking permission or leave of this court to file their names in-camera.

5.  On August 21, 2018, Plaintiffs filed an amended complaint to include counsel's electronic signature, which was missing from the original complaint.  The amended complaint alleges seven counts for relief:

- Count I    Cachola's violations of HRS § 19-3(4) regarding election fraud by campaigning in a medical facility in which he exercises influence over voters' receipt of healthcare

- Count II   Cachola's violations of HRS § 84-12 regarding confidential information

- Count III  Cachola's violations of HRS § 11-137 regarding election fraud

2

- Count IV          Cachola's violations of HRS § 19-6(8), a misdemeanor election offense

- Count V          Nago failed to preclude tampering in an election pursuant to HRS § 11-4

- Count VI         Nago failed to comply with the Help America Vote Act of 2002 (HAVA)

- Count VII       Cachola's violations of the Health Insurance Portability and Accountability Act of 1996 (HIPAA)

6. As against Cachola, Plaintiffs allege that during the course of the 2018 primary campaign, Cachola violated several provisions of federal and state law –- voter fraud (HRS § 19-3), illegal handling of absentee ballots (HRS § 19-6), asking to see a ballot (HRS § 11-137), violations of HIPAA, and improper use of confidential information by a legislator (HRS § 84-12). They contend that Cachola "coerces and intimidates votes from a vulnerable population" and "mingles his residence and campaign 'headquarters' with a medical clinic operated by his wife[.]" They maintain that "[v]oter fraud is Cachola's primary form of political campaigning" -– he intimidates patients of his wife's medical clinic to vote for him in consideration of the condition and continuing deliverance of medical care provided by his wife's medical practice, and goes house to house through the district seeking absentee ballots in the final weeks of the campaign season, just prior to the deadline to submit them to the Office of Elections. Plaintiffs allege that Cachola has admitted to these actions in past elections and, as a result, in 2013, the legislature amended HRS § 19-6 (Act 235).

7. As against Nago, Plaintiffs allege that Nago violated his duty under state law by failing to preclude vote tampering in an election and failing to comply with federal

3

requirements in conducting an election. They contend that by accepting absentee ballots at any polling place on the day of the election, allowing absentee voters to vote in-person if they claimed a lost or destroyed ballot, and then tabulating dropped off absentee ballots after 3:00 a.m. the day after the election, the Office of Elections has invited voter fraud, vote tampering, ballot stuffing, and disarray in the State of Hawaiʻi's elections. They further allege that Nago failed to comply with the Help America Vote Act of 2002 § 402(b) by not having a procedure for citizens to file a grievance regarding an election crime under federal law. Plaintiffs claim that as a direct consequence of Nago's acts, they were victims of an illegal act which changed the results of the election.

8. Plaintiffs ask this court to:

- order a briefing schedule and allow them the opportunity to collect and present further evidence if necessary;

- order a recount of the ballots of the Democratic Party race for the Hawaiʻi House of Representative District 30;

- order a review of voter registration forms for District 30 to account for those individuals who are ineligible to vote under Hawaiʻi law -- specifically, review voting roles for individuals who were deceased prior to the period in which he or she could have voted in violation of HRS § 15-4(h)(2);

- order an investigation to review the 2018 voter registration forms against the patient list of Cachola's wife's medical practice, and review the patient list of the medical practice with the submission of "mail in drop off" ballots;

- order a review of the Office of Elections' policy regarding receipt, verification, and counting of "mail in drop off" ballots to ensure that all votes cast using this method were valid;

4

- refer the allegations noted in the complaint to the Hawai'i State Office of the Attorney General for prosecution;

- refer the allegations noted in the complaint to the Federal Bureau of Investigations or another appropriate federal agency for violations of 18 U.S.C. § 594 regarding the intimidation of voters;

- refer the allegations noted in the complaint to the State of Hawai'i Department of Health or another appropriate agency for investigation regarding the use of medical records and confidential patient information for the purpose of political campaigning, and allowing access of medical records and confidential patient information to a third-party business associate who uses the information for illegal purposes;

- refer the allegations noted in the complaint to the Hawai'i State Ethics Commission; and

- disqualify and remove Cachola from the ballot in the forthcoming State of Hawai'i general election.

9. Cachola filed a motion to dismiss the amended complaint. Cachola challenges Plaintiffs' standing to file the election contest because their identities have been filed in-camera and he is unable to determine whether they are at least thirty registered voters from Hawai'i House District 30 to satisfy the requirements of HRS § 11-172. Cachola also argues that the amended complaint fails to present any evidence of "errors, mistakes, or irregularities", or any other such basis, such as "provable fraud, overages, or underages" that could cause a difference in the election result as mandated under HRS § 11-172, and that the remedies requested by Plaintiffs are improper and cannot be awarded by this court in a primary election contest.

10. Nago filed a motion to dismiss the amended complaint for lack of jurisdiction based on defective service of the amended complaint, on the ground that this is not a typical

5

election contest and does not fall within the court's jurisdiction for original proceedings to determine the results of an election, and for failure to satisfy the statutory requirements to prevail in an election contest. Nago further argues that the remedies requested by Plaintiffs are improper and cannot be awarded by this court in a primary election contest.

11. Nago contends that there are two defects with the election complaint -- (1) the filing of Plaintiffs' identities in-camera; and (2) two omitted or misnumbered and sealed declarations. Nago argues that Plaintiffs improperly sealed or submitted for in-camera inspection the list of their names and, therefore, he is unable to verify whether at least thirty of the Plaintiffs are registered voters as required by HRS § 11-172. Nago requests that if this court determines that it has jurisdiction over the amended complaint and Plaintiffs are permitted to proceed, that their status as voters be confirmed in order to determine whether they can properly bring this complaint pursuant to HRS § 11-172. In addition, Nago contends that he is unable to review all the evidence because two declarations relied on by Plaintiffs are either not included in the exhibits or are misnumbered and sealed and, therefore, requests that the declarations be stricken or unsealed and made available.

12. Plaintiffs filed a motion in opposition to the motion to dismiss filed by Nago.

13. Concurrent with the filing of the motion in opposition to the motion to dismiss, Plaintiffs filed a motion for discovery, requesting that this court order Nago to provide the court and the parties with discovery so that they may ascertain the veracity of the allegations in the amended complaint.

CONCLUSIONS OF LAW

1. Pursuant to HRS § 11-172, an election contest may be filed by "any candidate, or qualified political party interested, or any thirty voters of any election district."

2. Because Plaintiffs filed a list of their names in-camera, neither Cachola nor Nago are able to verify whether Plaintiffs comprise "thirty voters of any election district" to satisfy the requirement of HRS § 11-172.

3. HRCP Rule 4(d), made applicable to this election proceeding pursuant to HRCP Rule 81(b)(10), requires personal service of the complaint and summons on an individual and, in the case of a state official, service on the state official and the State, through the attorney general:

> (d) *Same; Personal service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be as follows:
> (1) Upon an individual other than an infant or incompetent person, (A) by delivering a copy of the summons and of the complaint to the individual personally or in case the individual cannot be found by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or (B) by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.
> . . . .
> (4) Upon the State by delivering a copy of the complaint to the attorney general of the State or to the assistant attorney general or to any deputy attorney general who has been appointed by the attorney general.
> (5) Upon an officer or agency of the State by serving the State and by delivering a copy of the summons and of the complaint to such officer or agency. . . .

4. Plaintiffs name two defendants -- (1) Cachola, as an individual; and (2) Nago, in his official capacity as the Chief Election Officer.

7

5.    As to Cachola, HRCP Rule 4(d)(1) requires personal service on Cachola.  According to the return of service, a copy of the amended complaint and summons was served on Cachola at 936 Kalihi Street, Honolulu, HI 96819, on August 22, 2018.

6.    As to Nago, HRCP Rule 4(d)(4) and (5) require personal service on Nago and the attorney general, assistant attorney general, or deputy attorney general.  According to the return of service, a copy of the amended complaint and summons was served on Nago, though general counsel Aaron H. Schulaner, at 800 Lehua Avenue, Pearl City, HI 96782, on August 27, 2018.  There is no indication in the record that a copy of the amended complaint and summons was served on the attorney general, assistant attorney general, or deputy attorney general as required under HRCP Rule 4(d)(4) and (5).

7.    The Office of the Attorney General, however, received an electronic copy of the amended complaint upon its filing on August 21, 2018, as reflected in the notice of electronic filing.  While electronic service is not deemed personal service for purposes of a complaint, in this instance, both Nago and the Attorney General timely received a copy of the amended complaint and timely filed a response.

8.    Although the procedure for service of the amended complaint and summons was not strictly followed, neither Nago nor Cachola were prejudiced.

9.    Plaintiffs accuse Cachola of criminal actions and request that the matter be referred to various law enforcement agencies.  These allegations are serious and may warrant further investigation.

10.   In a primary election challenge, however, HRS § 11-173.5(b) only authorizes the supreme court to "decide what

8

candidate was nominated or elected."

11. Therefore, an election contest of a primary election pursuant to HRS § 11-173.5 is not the appropriate basis to seek relief from these alleged criminal activities. See e.g., Haw. Const., art. III, § 12 ("Each house shall be the judge of the elections, returns and qualifications of its own members and shall have, for misconduct, disorderly behavior or neglect of duty of any member, power to punish such member by censure or, upon a two-thirds vote of all the members to which such house is entitled, by suspension or expulsion of such member."); HRS § 11-173.5(b) (the sole remedy that the court may provide in an election contest is "decid[ing] what candidate was nominated or elected").

12. Also, a complaint challenging the results of a primary election fails to state a claim unless the plaintiff demonstrates errors, mistakes or irregularities that would change the outcome of the election. See HRS § 11-172 (2009); Tataii v. Cronin, 119 Hawai'i 337, 339, 198 P.3d 124, 126 (2008); Akaka v. Yoshina, 84 Hawai'i 383, 387, 935 P.2d 98, 102 (1997); Funakoshi v. King, 65 Haw. 312, 317, 651 P.2d 912, 915 (1982); Elkins v. Ariyoshi, 56 Haw. 47, 48, 527 P.2d 236, 237 (1974).

13. A plaintiff challenging a primary election must show that he or she has actual information of mistakes or errors sufficient to change the election result. Tataii, 119 Hawai'i at 339, 198 P.3d at 126; Akaka, 84 Hawai'i at 388, 935 P.2d at 103; Funakoshi, 65 Haw. at 316-317, 651 P.2d at 915.

14. In order for a complaint to be legally sufficient, it must "show[] that the specific acts and conduct . . . complained of would have had the effect of changing the results

9

of the primary election." Elkins, 56 Haw. at 49, 527 P.2d at 237.

15. An election contest cannot be based upon mere belief or indefinite information. Tataii, 119 Hawai'i at 339, 198 P.3d at 126; Akaka, 84 Hawai'i at 387-388, 935 P.2d at 102-103.

16. When reviewing a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff; dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. AFL Hotel & Restaurant Workers Health & Welfare Trust Fund v. Bosque, 110 Hawai'i 318, 321, 132 P.3d 1229, 1232 (2006).

17. Taking Plaintiffs' allegations as true and viewing them in the light most favorable to them, it appears that Plaintiffs' allegations of election fraud or vote tampering are not sufficient to constitute mistakes or errors that would change the results of the election for the Office of State Representative, District 30.[8]

18. This conclusion is further supported by the motion for discovery, in which Plaintiffs acknowledge that they need discovery from the Office of Elections so that the veracity of

---

[8] Although Plaintiffs submitted two declarations of Plaintiffs, the declarations were submitted in-camera without the court's permission and Nago and Cachola have been unable to review the documents. Nevertheless, the declarations as written do not provide sufficient information for this court to grant the requested relief in a primary election contest filed pursuant to HRS §§ 11-172 and 11-173.5. The declarations provide information from two individuals regarding Cachola's alleged actions and regarding absentee ballots.

their allegations may be verified and that they do not have a duty to investigate crime. Plaintiffs' allegations that Nago had a system in place regarding absentee ballots that invited vote tampering or denied access to filing of a complaint does not amount to actual evidence proving voter fraud or other error or misconduct that could have caused a difference between Cachola's vote count (920 votes) and Ganaden's vote count (869 votes). It appears that there is a system in place, governed by statute and administrative rules, in the oversight, handling and processing of absentee ballots on election day, as well as preventing the possibility of double voting by absentee mail voters. See HRS § 15-9; HAR § 3-174-13; HRS § 16-43. Plaintiffs fail to establish that the process undertaken by the Office of Elections on the day of the primary election constitutes errors, mistakes, or irregularities that would change the outcome of the election.

19. The remedy provided by HRS § 11-173.5(b) of having the court decide which candidate was nominated or elected is the only remedy that can be given for primary election irregularities challenged pursuant to HRS § 11-173.5. Funakoshi, 65 Haw. at 316, 651 P.2d at 914.

20. Ordering a briefing schedule and allowing Plaintiffs to collect and present further evidence, ordering a recount of the ballots in District 30, ordering the review of voter registration forms for District 30 to verify that deceased voters have not voted, ordering an investigation to review 2018 voter registration forms against the patient list of Cachola's wife's medical practice, reviewing the Office of Elections' policy regarding the receipt, verification and counting of mail or drop off ballots to ensure all votes cast using this method

11

were valid, and referring Plaintiffs' allegations of wrongdoing to the Office of the Attorney General, the Federal Bureau of Investigation, the Department of Health, and the State Ethics Commission are not remedies provided by HRS § 11-173.5(b) ("The judgment shall decide what candidate was nominated or elected[.]").

21. Therefore, the amended complaint fails to state claims upon which relief can be granted.

<u>JUDGMENT</u>

Based upon the foregoing findings of fact and conclusions of law, judgment is entered dismissing the amended complaint. The dismissal of this election contest does not preclude Plaintiffs from seeking other courses of action deemed appropriate. Romy M. Cachola received the highest number of votes and his name shall be placed on the ballot as the Democratic Party candidate for the Office of State Representative, District 30 for the 2018 general election.

The clerk of the supreme court shall also forthwith serve a certified copy of this judgment on the chief election officer in accordance with HRS § 11-173.5(b).

DATED: Honolulu, Hawaiʻi, August 31, 2018.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



12